UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SAMSON MCA LLC,

Plaintiff,

v.

ACROSS THE STREET HOLDINGS, INC. d/b/a ACROSS THE STREET DINER; ACROSS THE STREET BISTRO & DINER; ANDREAS KOTSIFOS; and HEATHER A. FARMAKIS,

Defendants.

**DECISION AND ORDER**

6:24-CV-06601 EAW

## INTRODUCTION

Plaintiff Samson MCA LLC ("Plaintiff") commenced this breach of contract action against defendants Across the Street Holdings, Inc. d/b/a Across the Street Diner, Across the Street Bistro & Diner ("ASH"), Andreas Kotsifos ("Kotsifos"), and Heather A. Farmakis ("Farmakis") (collectively "Defendants") alleging that ASH breached a revenue purchase agreement with Plaintiff and that Kotsifos and Farmakis personally guaranteed ASH's obligations under the contract. (Dkt.1-1).

Before the Court is Defendants' motion for summary judgment. (Dkt. 12). For the reasons that follow, the motion is denied.

## BACKGROUND

### I. Factual Background

The following facts are taken from Defendants' statement of undisputed facts (Dkt. 12-5), and the exhibits submitted.[1]

On October 3, 2022, Plaintiff and Defendants entered into a "Revenue Purchase Agreement" ("Agreement 1") wherein ASH received $330,000 in exchange for Plaintiff's rights to ASH's future receivables, at a value of $462,000. (Dkt 12-5 at ¶ 1; Dkt. 12-3). In connection with Agreement 1, ASH signed a "Security Agreement and Guaranty of Performance" (Dkt. 12-5 at ¶ 2; Dkt. 12-3 at 6), and Kotsifos and Farmakis signed a "Guaranty of Performance," agreeing to act as personal guarantors (Dkt. 12-5 at ¶ 3; Dkt. 12-3 at 7).

On October 31, 2022, the parties entered into a second "Revenue Purchase Agreement" ("Agreement 2") (or collectively the "Agreements") wherein Plaintiff agreed to purchase all rights to ASH's future receivables at a purchase price of $400,000 for an agreed upon value of $560,000. (Dkt. 12-5 at ¶ 4; Dkt. 12-4). In connection with

---

[1] Plaintiff did not respond to Defendants' statement of facts and the Court presumes that it does not contest them. *See Fed. Deposit Ins. Corp. v. Deutsche Bank Sec. Inc.*, 819 F. Supp. 3d 301, 302 n.4 (S.D.N.Y. 2026) ("When a nonmoving party fails to respond to a Local Civil Rule 56.1 Statement, the court is "permit[ted] . . . to conclude that the facts asserted in the statement are uncontested and admissible." *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009)). "However, '[b]efore summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed.'" *Id.* (quoting *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014)). Indeed, essentially the same facts are contained in Plaintiff's complaint.

Agreement 2, ASH signed a second "Security Agreement and Guaranty of Performance" (Dkt. 12-5 at ¶ 5; Dkt. 12-4 at 6), and Kotsifos and Farmakis signed a second "Guaranty of Performance" agreement as personal guarantors (Dkt. 12-5 at ¶ 6; Dkt. 12-4 at 7).

On October 16, 2024, Plaintiff commenced this action against Defendants alleging that Plaintiff remitted the purchase price for the future receivables under the Agreements, but ASH ceased remitting payment as required. (Dkt. 1-1). Plaintiff's complaint asserts a cause of action for breach of contract against ASH for failing to remit Plaintiff's share of future receivables and intentionally impeding Plaintiff from receiving the proceeds of the receivables as contracted, resulting in total damages in the amount of $957,632.05. (*Id.* at ¶¶ 18-21). Plaintiff asserts a second cause of action against Kotsifos and Farmakis, as guarantors. (*Id.* at ¶¶ 23-25). Plaintiff's damages consist of $729,778.50 in unremitted receivables, $3,920 in NSF fees, $5,000 in default fees, and $218,933.55 in attorneys' fees. (*Id.* at ¶¶ 12, 13, 21, 25).

## II. Procedural Background

Plaintiff initiated this action in New York State Supreme Court, Monroe County, on September 16, 2024. (Dkt. 1-1). On October 16, 2024, Defendants removed the matter to this Court on the basis of diversity jurisdiction (Dkt. 1) and filed an answer (Dkt. 2).

On May 20, 2025, Defendants filed the instant motion for summary judgment. (Dkt. 12). Plaintiff raised a discovery matter (Dkt. 15) and was directed by United States Magistrate Judge Holland to file a formal motion for the relief sought (Dkt. 19). Thereafter Plaintiff filed a motion for an extension of time to complete discovery (Dkt. 20) and a motion to hold the briefing on the summary judgment motion in abeyance pending the

outcome of its motion to extend discovery deadlines (Dkt. 22). Plaintiff filed its opposition to the summary judgment motion on June 16, 2025 (Dkt. 25), and on July 2, 2025, Defendants filed their reply (Dkt. 29). On October 3, 2025, Judge Holland denied the motion for an extension of time to complete discovery (Dkt. 30) and on January 19, 2026, this Court denied as moot the motion to adjourn summary judgment briefing (Dkt. 31).

## DISCUSSION

### I. Summary Judgment Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find for that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec*., 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

## II. Analysis

Defendants move for summary judgment on the ground that the Agreements were criminally usurious loan agreements that are void and unenforceable as a matter of law. Alternatively, even if not void, they contend that they are entitled to partial summary judgment on the unconscionability of the attorneys' fees provisions in the Agreements.

The Court will address each argument in turn, but before turning to the merits, notes that there is a growing and conflicting body of caselaw as to how "revenue purchase agreements" or "merchant cash advance agreements" similar to the ones at issue here, should be treated in the law. As stated by the bankruptcy court in *In re: Kossoff PLLC v. Eprodigy Fin., LLC*, No. 21-10699 (DSJ), 2026 WL 2168916, at *1 (Bankr. S.D.N.Y. July 27, 2026):

> This decision addresses an evolving area of law that is significant in bankruptcy and other commercial contexts: whether a series of so-called 'merchant cash advance' agreements are, as they are expressly styled, agreements for the sale of assets under which a provider of funding makes an up-front payment to a business in exchange for a specified share of its future receivables or revenues, or whether transactions under the agreements are, under New York law requiring examination of agreements' substance rather than their form, disguised loans notwithstanding the financing party's best efforts to style the transactions as asset purchases.
>
> . . .
>
> A growing body of case law has grappled with disputes involving merchant cash advance agreements. Many cases concluded that similar agreements constitute asset sales, but more recently an increasing number, following long-established New York state-court case law, have concluded that similar transactions are disguised loans.

*See also In re Greenwich Retail Grp. LLC*, 677 B.R. 473, 496 (Bankr. S.D.N.Y. 2026) ("New York courts have issued many decisions with respect to whether particular merchant cash advance transactions should be treated as loans or as sales of future receivables or

receipts. Itria argues that the prevailing rule is that such transactions are sales and not loans, but the cases that Itria has cited for that proposition are not up to date. . . . At one time, [o]nly a small number of bankruptcy courts and commercial law scholars had begun challenging the prevailing characterization of these transactions as sales by looking beyond the contractual language to deeper commercial realities. However, [t]he ground has shifted substantially in the years that have followed." (citation modified)); *Ilend Advance LLC v. Her Mktg. Concepts, Inc.*, 88 Misc. 3d 1239(A), 252 N.Y.S.3d 438, 2026 WL 833097, at *2 (Erie Cty. 2026) ("In fact, [Revenue Purchase Agreements] are known for their predatory character precisely because so much downside risk is born by the lender."); *Samson MCA LLC v. Elephant Constr. Sols. LLC*, 88 Misc. 3d 1238(A), 251 N.Y.S.3d 891, 2026 WL 817855, at *1 (Erie Cty. 2026) ("This case concerns a 'Merchant Cash Advance,' also known as an MCA, an alternative and arguably extreme form of financing for small businesses with very few financing options at their disposal."); *Surfside Cap. v. Rodgers*, 87 Misc. 3d 1258(A), 245 N.Y.S.3d 917, 2025 WL 3769615, at *2 (Kings Cty. 2025) ("Merchant cash advance contracts—agreements ostensibly providing for the purchase by a merchant cash advance company of a merchant's future receivables at a discounted price—are controversial. . . ."); *Monday Funding v. Black Friday Deals AZ Inc.*, 85 Misc. 3d 1286(A), 232 N.Y.S.3d 382, 2025 WL 1479316, at *2 (Nassau Cty. 2025) ("This Court must be satisfied that this 'Merchant Cash Advance Agreement' advanced by the Plaintiff is not a 'Predatory Lending Scheme' that is used to target vulnerable small businesses and their owners by issuing loans with excessive fees and high interest rates.").

### A. Legal Principles

"Under New York law,[2] a breach of contract claim has four elements: (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Inv's Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998). "In an action to recover on a note, usury is an affirmative defense and the party seeking to void the loan agreement bears the burden of proving usury." *BKNS Mgmt. LLC v. Frysta Mgmt. LLC*, No. 24 CIV. 3631 (JPC), 2025 WL 1504428, at *4 (S.D.N.Y. May 27, 2025) (quoting *Adar Bays, LLC v. GeneSYS ID, Inc.*, 37 N.Y.3d 320, 335 (2021)). New York criminal usury laws set the maximum permissible interest rate at 25%; *Steel River Sys., LLC v. Variant Alternative Income Fund*, No. 25-2460, 2026 WL 2529579, at *1 (2d Cir. Aug. 27, 2026) (citing N.Y. Penal Law § 190.40), and loans proven to exceed that amount are deemed void *ab initio*, *Adar Bays*, *LLC,* 37 N.Y.3d at 324. Defendants contend that the Agreements with Plaintiff violate New York usury laws and provide a complete defense to the enforcement of the Agreements at issue as a matter of law. The Court disagrees.

First, in order for the usury laws to be applicable, the Agreements must be considered loans. *Seidel v. 18 E. 17th St. Owners*, 79 N.Y.2d 735, 744 (1992) ("If the transaction is not a loan, there can be no usury, however unconscionable the contract may be") (citation modified)); *Newco Cap. Grp. LLC v. SPE Trading, Inc.*, 250 A.D.3d 1641, 1643 (4th Dep't 2026) ("It is well settled that usury laws apply only to loans."); *Diesel*

---

[2] The Agreements provide that they are to be governed in accordance with the laws of the State of New York and neither party argues otherwise. (*See* Dkt. 12-3 at ¶ 4.5; Dkt. 12-4 at ¶ 4.5).

*Funding, LLC v. Build Retail, Inc*., 248 A.D.3d 1190, 1192 (2d Dep't 2026) ("The rudimentary element of usury is the existence of a loan or forbearance of money, and where there is no loan, there can be no usury, however unconscionable the contract may be" (quoting *LG Funding, LLC v. United Senior Props. of Olathe, LLC,* 181 A.D.3d 664, 665 (2d Dep't 2020)).

To assess whether an agreement constitutes a loan, it must be considered in totality, regardless of the name or form the parties have used. *Premium Merch. Funding 26, LLC v. Sonata Constr. LLC*, No. 25-CV-1086 (KMK), 2026 WL 867165, at *7 (S.D.N.Y. Mar. 30, 2026) ("New York's highest state court takes a functional view of whether a transaction is a loan, considering "substance—not form."). A determining factor is whether the plaintiff is absolutely entitled to repayment under all circumstances. *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 248 (S.D.N.Y. 2022) ("[T]he essential question was whether the purported MCA purchaser actually bears the risk of a revenue shortfall or if the agreement is structured to ensure an absolute payment obligation." (citation modified)); *Womack v. Cap. Stack, LLC*, No. 1:18-CV-04192 (ALC), 2019 WL 4142740, at *5 (S.D.N.Y. Aug. 30, 2019) ("The primary indicia of a loan are the debtor's absolute obligation to repay the principal sum without risk to the creditor of the debtor's business failure."). "New York courts usually weigh three factors in making that determination: '(1) whether there is a reconciliation provision in the agreement; (2) whether the agreement has a finite term; and (3) whether there is any recourse should the merchant declare bankruptcy." *Fleetwood Servs., LLC v. Richmond Cap. Grp. LLC*, No.

22-1885-CV, 2023 WL 3882697, at *2 (2d Cir. June 8, 2023) (quoting *Principis Cap., LLC v. I Do, Inc.*, 201 A.D.3d 752, 754 (2d Dep't 2022)).[3]

**B. Substance of the Agreements**

As an initial matter, the Agreements expressly state that they are not a loan. *See* Dkt. 12-3 at ¶ 1.10; Dkt. 12-4 at ¶ 1.10 ("Merchant and FUNDER[4] agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from FUNDER to Merchant."). The Agreements further state that the payment amount is contingent upon the generation of sufficient receivables, to further support the contention that the Agreements are not loans:

> Merchant is selling a portion of a future revenue stream to FUNDER at a discount, and is not borrowing money from FUNDER, therefore there is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by FUNDER. The Remittance is a good faith estimate of FUNDER's share of the future revenue stream. Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement. FUNDER is entering this

---

[3] Although both parties apply this three-part test to their arguments, the *Premium Merchant Funding* court noted, "[t]his test, however, has never been endorsed by the New York Court of Appeals, and it is the Court of Appeals's view—and this Court's predictions of how it would rule in a given case—that this Court must apply in interpreting state law." 2026 WL 867165, at *6-7. The *Premium Merchant Funding* court noted other relevant factors to help distinguish loans including the fact that "parties who are not directly exposed to market risk . . . are likely to be lenders, not investors" and also that "context, such as whether a party applied to the other for a loan or had outstanding, separate transactions, helps to distinguish between intent to borrow and intent to exchange in a joint transaction or exchange money for some other reason." *Id.* Here, Defendants have not established that they are entitled to summary judgment based on any of these factors.

[4] In the Agreements, ASH is defined as the "Merchant" and Plaintiff as "Funder." (Dkt. 12-3 at 2; Dkt. 12-4 at 2).

> Agreement knowing the risks that Merchant's business may not perform as expected or fail, and FUNDER assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give FUNDER a reasonable and fair opportunity to receive the benefit of its bargain. FUNDER acknowledges that it may never receive the Purchased Amount in the event that the Merchant does not generate sufficient revenue. Merchant and Guarantor(s)(s) are only guaranteeing their performance of the terms of this Revenue Purchase Agreement, and are not guaranteeing the payment of the Purchased Amount.

(*Id.* at 2). Of course, self-serving labeling does not end the inquiry and the Court must consider the totality of the substance of the Agreements to determine if they are disguised loans in order to evaluate Defendants' motion.[5]

The existence of a reconciliation provision in the Agreements counsels against concluding that the Agreements are loans. *Spin Cap., LLC v. Bridgelink Eng'g*, LLC, 248 A.D.3d 1074, 1076 (2d Dep't 2026) (holding that merchant agreement for purchase of future receivables was not a loan where the agreement "contained a clause that provided for the adjustment of the defendants' remittances in response to fluctuations in the defendants' receipts" which "rendered the term of the agreement indefinite").

Specifically, the Agreements' reconciliation provision provides:

> **1.3 Reconciliation.** As long as an Event of Default, or breach of this agreement, has not occurred, Merchant may request a retroactive reconciliation of the total Remittance Amount. All requests hereunder must be in writing to **reconciliationsl@samsonfunding.com**. Said request must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding if applicable, from the date of this Agreement through and including the date the request is made. FUNDER retains the right [sic] the request additional

5 To the extent that Plaintiff suggests that the Fourth Department's ruling in *Samson MCA LLC v. Joseph A. Russo M.D. P.C./IV Therapeutics PLLC*, 219 A.D.3d 1126, 1128 (4th Dep't 2023), is "binding" on this Court (*see* Dkt. 25 at 6, 14), or somehow precludes this Court from concluding differently, Plaintiff is incorrect.

> reasonable documentation including without limitation bank login or access to view Merchant's accounts using third party software, and Merchant's refusal to provide access shall be a breach of this Agreement and FUNDER shall have no obligation to reconcile. Such reconciliation, if applicable, shall be performed by FUNDER within two (2) Business Days following its receipt of Merchant's request for reconciliation by either crediting or debiting the difference back to, or from, Merchants Bank Account so that the total amount debited by FUNDER shall equal the Specific Percentage of the Future Receipts that Merchant collected during the requested month. Nothing set forth in this section shall be deemed to provide Merchant with the right to interfere with FUNDER's right and ability to debit Merchant's Account while the request is pending or to unilaterally modify the Remittance Amount, in any method other than the ones listed in this Agreement.

(Dkt. 12-3 at ¶ 1.3; Dkt. 12-4 at ¶ 1.3). The Agreements further provide for adjustments as follows:

> **1.4 Adjustments to the Remittance**. As long [as] an Event of Default, or breach of this agreement, has not occurred, Merchant may give notice to FUNDER to request a decrease in the Remittance, should they experience a decrease in its Future Receipts. All requests hereunder must be in writing to **reconciliations@samsonfnnding.com** and must include copies of all of Merchant's bank account statements, credit card processing statements, and accounts receivable report outstanding from the date of this Agreement through and including the date the request is made. FUNDER retains the right [sic] the request additional reasonable documentation including without limitation bank login or 3rd party software access to view Merchant's accounts, refusal to provide access shall be a breach of this Agreement and FUNDER shall have no obligation to reconcile. The Remittance shall be modified to more closely reflect the Merchant's actual receipts by multiplying the Merchant's actual receipts by the Purchased Percentage divided by the number of business days in the previous (2) calendar weeks. Merchant shall provide FUNDER with viewing access to their bank account as well as all information reasonably requested by FUNDER to properly calculate the Merchant's Remittance. At the end of the two (2) calendar weeks the Merchant may request another adjustment pursuant to this paragraph or it is agreed that the Merchant's Remittance shall return to the Remittance as agreed upon on Page 1 of this Agreement.

(*Id.* at ¶ 1.4). But as with the loan nomenclature, the existence of a reconciliation provision alone is not dispositive, rather, the Court must look at the effect of the provision and assess whether the provision shifts any risk to the buyer. *Lateral Recovery LLC v. Funderz.net, LLC*, No. 22-CV-2170 (LJL), 2024 WL 4350369, at *26 (S.D.N.Y. Sept. 27, 2024) ("When a nominal reconciliation provision does not actually shift risk to the buyer, this 'sham' reconciliation provision will not allow the transaction to escape the reach of the usury statute. . . . A provision which places the reconciliation decision within the 'sole discretion' of the buyer is a sham, because it does not alter the seller's absolute obligation to repay.").

Here, although Defendants argue that the reconciliation provisions are illusory and the provisions are discretionary and onerous (*see* Dkt. 12-1 at 14-16), they have not established as much as a matter of law, particularly where the reconciliation provisions in the Agreements on their face are not wholly discretionary and indicate that the remittance "shall be modified" upon receipt of Defendants' documentation justifying reconciliation. *Compare Lateral Recovery,* 2024 WL 4350369, at *27 ("This reconciliation provision is clearly discretionary, as it explicitly states that reconciliation is 'a courtesy' which BMF 'is under no obligation to provide.'") *with US Info. Grp. LLC v. EBF Holdings, LLC*, No. 22-CV-6661 (PKC), 2023 WL 6198803, at *8 (S.D.N.Y. Sept. 22, 2023) ("By contrast, an enforceable reconciliation provision, pursuant to which payment is to be adjusted according to the seller's actual receipts, is generally inconsistent with classification as a loan subject to the usury laws."). At the very least, the language of the provision in the Agreements suggests the existence of a mechanism to amend the remittance amount due to a change in ASH's actual receivables. *In re Kossoff*, 2026 WL 2168916, at *8 ("Reflecting

the logical view that true sales of receivables should involve payment amounts that change to track receivables that are actually realized, a true reconciliation provision requires a mechanism by which the remittance amount is adjusted to reflect the merchant's actual receivables and obligates the MCA funder to account for amounts collected in excess of the agreed percentage of receivables. . . . Such a provision supports characterization of a transaction as a true sale because it demonstrates that the purchaser, rather than the merchant, bears the risk that receivables will underperform."). To the extent that Defendants contend that those provisions were a sham or illusory, that inquiry cannot be resolved on the record before the Court. *Crown Bridge Partners, LLC v. Sunstock, Inc.*, No. 18 CIV. 7632 (CM), 2019 WL 2498370, at *6 (S.D.N.Y. June 3, 2019) ("Here, by contrast, Sunstock's theory of usury is that the Note's stated 8% interest rate was illusory. This calls upon the Court to consider, among other things, Crown Bridge's intent, and therefore engage in a fact-based inquiry. That inquiry is better suited for a later stage of litigation."); *KBM World Wide, Inc. v. Hangover Joe's Holding Corp.*, No. CV157254(SJF)(GRB), 2017 WL 685606, at *4 (E.D.N.Y. Feb. 1, 2017) (denying merchant's summary judgment motion where "determinations [as to whether the agreements were usurious] cannot be made upon the scant record before the Court"), *report and recommendation adopted*, 2017 WL 680418 (E.D.N.Y. Feb. 21, 2017).

As to question of whether the Agreements have a finite term, Defendants contend that the Agreements' contain finite terms of 220 days in Agreement 1 and 224 days in Agreement 2, which they argue demonstrate that the Agreements are disguised loans, whereas Plaintiff argues that the Agreements do not contain a fixed term, not only due to

the reconciliation provision, but also due to the fact that the remittances were set to continue until such time as enough receivables were generated to remit the entirety of the purchased amount to Plaintiff. Specifically, the Agreements provide:

> In consideration of payment by FUNDER to Merchant of the Purchase Price set forth above, Merchant hereby sells, assigns and transfers to FUNDER (making FUNDER the absolute owner) the Purchased Percentage of all of Merchant's payments, receipts, settlements and funds paid to or received by or for the account of Merchant from time to time on and after the date hereof in payment or settlement of Merchant's existing and future accounts, payment intangibles, credit, debit and/or stored value card transactions, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other payors or obligors (the "Future Receipts" defined as all payments made by cash, check, clearinghouse settlement, electronic transfer or other form of monetary payment), for the payments to Merchant as a result of Merchant's sale of goods and/or services (the "Transactions") until the Purchased Amount has been delivered by or on behalf of Merchant to FUNDER.

(Dkt. 12-3 at 2; Dkt. 12-4 at 2).

On this point, the fact that the terms of the Agreements permit funding from all accounts with a fixed daily remittance amount designed to ensure that Plaintiff's targeted return would be met, is a factor more characteristic of a loan. *See In re Greenwich Retail Grp. LLC*, 677 B.R. 473, 501 (Bankr. S.D.N.Y. 2026) ("[A] plausible case has been stated that [the funder] took no substantial market risks and that the risks of nonpayment that [the funder] took are merely credit risks in disguise. The 'Receivables' out of which [the funder] was entitled to payment covered virtually every kind of receipt the Debtors would be expected to have, so that [the funder] was entitled to a full recovery 'in virtually every imaginable circumstance.'" (citation modified)). And the term of and expected duration of repayment is calculable. *See Haymount Urgent Care PC v. GoFund Advance, LLC*, 609

F. Supp. 3d 237, 249 (S.D.N.Y. 2022) ("While none of the MCA agreements have definite terms spelled out in the texts of those contracts, the expected duration of the repayment period is readily calculable, since the merchant's total repayment amount due is known, as is the daily remittance amount. While that remittance is subject to reconciliation, and thus to extension of the loan term, 'the contingent nature of [potential future payments] [do not] remove the loan from the scrutiny of the usury law.'" (quoting *Adar Bays*, 37 N.Y.3d at 338)). Thus, this factor supports a conclusion that the Agreements are loans.

Finally, Defendants argue that Plaintiff is protected in the event ASH files for bankruptcy. The Agreements require that "Merchant is required to give FUNDER written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give FUNDER seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock." (Dkt. 12-3 at ¶ 3.6; Dkt. 12-4 at ¶ 3.6). But a notice provision is not the equivalent of an agreement providing automatic recourse to the lender, nor is there is a provision providing that ASH declaring bankruptcy would constitute default under the Agreements and indeed, the language of the Agreements states otherwise. (Dkt. 12-3 at 2; Dkt. 12-4 at 2 ("Merchant going bankrupt or going out of business, or experiencing a slowdown in business, or a delay in collecting its receivables, in and of itself, does not constitute a breach of this Agreement.")). While Defendants argue that regardless of the language in the Agreement, these provisions provided protection to Plaintiff and set it up to be a secured creditor in the event of bankruptcy, on the face of the documents and the record before the Court, Defendants have not established that this element undisputably entitles them to judgment as a matter of law. *See Spin Cap., LLC*,

248 A.D.3d at 1076 (not a loan where "no contractual provision existed establishing that a declaration of bankruptcy would constitute an event of default").

Because the Court cannot resolve the questions presented in Defendants' motion in their favor as a matter of law at this juncture, it joins other courts denying summary judgment where similar factual disputes were present. *See Lateral Recovery LLC*, 2024 WL 4350369, at *31 (denying summary judgment to both parties as to whether merchant case advance agreements were usurious, stating "[w]hen usury is not clear from the face of a written agreement, questions of usurious intent and whether a transaction is a cover for usury are typically question[s] of fact. One party will argue that the agreement was intended as the writing suggests, and the other party will produce evidence that the writing was a cover for usury, creating an issue of fact for the jury." (citation modified)); *see also Kapitus Servicing, Inc. v. Suburban Waste Servs., Inc.,* 246 A.D.3d 661, 661-62 (1st Dep't 2026) ("We disagree that the agreements are loans as a matter of law, and find instead that the record presents issues of fact as to whether the agreements are loans or a sale and purchase of receivables, thus rendering summary judgment on either motion inappropriate. . . . While certain provisions suggest that the transactions were a loan, other provisions suggest that the transactions were instead a sale and purchase of receivables. . . . As consideration of the three factors provides no definitive answer as to whether the agreements can be categorized as loans, the record presents an issue of fact as to how to characterize the agreements."); *EBF Holdings, LLC v. Defiant Arms, L.L.C.*, 251 A.D.3d 1448, 1452 (4th Dep't 2026) ("Finally, we conclude that defendants raised an issue of fact whether the agreement was a usurious loan as opposed to a purchase of accounts receivable.

. . . Given the totality of the circumstances . . . including the selection of [weekly] payment rates that did not appear to represent a good faith estimate of receivables . . . and provisions authorizing [plaintiff] to collect on the personal guaranty in the event of [the] business's inability to pay or bankruptcy . . . we conclude that there are triable issues of fact which prevent summary judgment." (citation modified)); *Kapitus Servicing, Inc. v. Ragtime Gourmet Corp./Joe-Le Holding Corp.*, 242 A.D.3d 638, 638 (1st Dep't 2025) ("The motion court correctly denied plaintiff's motion for summary judgment because there are issues of fact as to whether the cash advance agreement constitutes a loan that may be criminally usurious, rather than an enforceable agreement for the sale and purchase of receivables."); *Piccirilli v. Benjamin*, 196 A.D.3d 895, 899 (3d Dep't 2021) ("We are mindful of the strong presumption against a finding of usury . . . and that the usurious nature of the transaction does not appear upon the face of the [loan documents]. . . . That said, we find that the parties' characterization of the entire transaction presents a credibility issue for resolution by a factfinder at trial." (citation modified)); *Bouffard v. Befese, LLC*, 111 A.D.3d 866, 869 (2d Dep't 2013) ("Whether a transaction constitutes a cover for usury is a question of fact" and, "[w]hen determining whether a transaction constitutes a usurious loan it must be considered in its totality and judged by its real character, rather than by the name, color, or form which the parties have seen fit to give it"); *Abir v. Malky, Inc.*, 59 A.D.3d 646, 649 (2d Dep't 2009) ("Whether a transaction constitutes a cover for usury is a question of fact."); *MCA Servicing Co. v. Nic's Painting*, LLC, 82 Misc. 3d 1252(A), 209 N.Y.S.3d 825, 2024 WL 2281580, at *3 (Rockland Cty. 2024) ("More important, however, is a most fundamental question: whether the RPA is void and unenforceable, either because it is an

illegal usurious loan or a fundamentally unconscionable contract. If the RPA is a loan masquerading as an asset purchase—a wolf in sheep's clothing—and if a calculation of the transaction's cost reveals a usurious rate of interest, then the RPA is unenforceable. . . . Here, there are significant issues as to (i) the true nature of the RPA, (ii) the alleged breach by Defendants, and (iii) damages. Therefore, this Court finds that many material issues of fact remain outstanding.").

**C. Attorneys' Fees Provisions**

Alternatively, Defendants argue that even if the Agreements are not criminally usurious loans, the attorneys' fees provisions contained in the Agreements are unconscionable and therefore unenforceable.

With respect to attorneys' fees, the Agreements provide:

> **3.4 Attorney's Fees.** Upon the occurrence of an Event of Default, and Funder retains an attorney or law firm to enforce this Agreement, Merchant and Guarantor(s) agree that a fee equal to 30% of the Remaining Balance (purchased amount less amount remitted by Merchant) ("Attorney's Fees") shall be immediately assessed Merchant and Guarantor(s) agree that the calculation for Attorney's Fees is reasonable.

(Dkt. 12-3 at ¶ 3.4; Dkt. 12-4 at ¶ 3.4).

In New York, "[a]n award of attorneys' fees pursuant to such a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered." *Samson MCA LLC v. DI Constr. LLC*, 88 Misc. 3d 1269(A), 255 N.Y.S.3d 697, 2026 WL 1379284, at *4 (Monroe Cty. 2026) (quoting *Kamco Supply Corp. v. Annex Contracting Inc.*, 261 AD2d 363, 365 (2nd Dept. 1999)). "The fixed percentage fee, therefore, is viewed only as a maximum fee, limiting the amount of

reasonable attorneys' fees which the creditor may charge upon proving the extent of the necessary services actually rendered." *Id.* (quoting *Mead v. First Tr. & Deposit Co.*, 60 AD2d 71, 78 (4th Dept. 1977)).[6] In other words, "when the parties have contracted to pay a fixed amount in attorneys' fees in the event of default, the court is 'not bound by the fixed percentage set forth in the contract, but [has] the inherent authority to determine reasonable attorneys' fees.'" *AKF, Inc. v. Creative Fiberglass, LLC*, No. 19CV06994(FB)(PK), 2021 WL 7186067, at *6 (E.D.N.Y. June 13, 2021) (quoting *Orix Credit All. v. Grace Indus.*, 261 A.D.2d 521, 521 (2d Dep't 1999)); *Newco Cap. Grp. VI LLC v. K Transco Inc.*, 82 Misc. 3d 1226(A), 207 N.Y.S.3d 922, 2024 WL 1592510, at *4 (Rockland Cty. 2024) ("Plaintiff is also requesting a fixed attorney's fee award of 30% of the balance of the amount due. However, the Supreme Court is not bound by the fixed percentage set forth in the contract but has the inherent authority to determine reasonable attorneys' fees. . . . Thus, an award of attorneys' fees pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered.").

Because the Court is not bound by the percentage set in the Agreements and there is no evidence before the Court to assess whether that amount is reasonable under the circumstances, granting summary judgment and striking the provision from the Agreements is premature. *Marjan Int'l Corp. v. Azarian*, No. 97 CIV. 8598 (JSM), 2000

---

[6] To the extent that Plaintiff cites cases involving a contingency agreement between a lawyer and client setting a fee of 30%, such cases are inapposite to the circumstances here.

WL 744120, at *2 (S.D.N.Y. June 9, 2000) ("Courts in the Second Circuit have followed the New York rule that a fee-recovery provision setting attorneys' fees as a fixed-percentage of the debt or damages must be reasonable. . . . Attorney's fees unilaterally fixed by contract are no less subject to the test of reasonableness than attorney's fees awarded by the court." (citation modified)); *Newco Cap. Grp. VI LLC v. K Transco Inc.*, 2024 WL 1592510, at *5-6 ("Plaintiff may be entitled to recover an attorney's fee of a fixed percentage if it can demonstrate that the quality and quantity of the legal services rendered were such as to warrant, on a *quantum meruit* basis, that full percentage. . . . If the plaintiff does not make that demonstration, then a reasonable attorney's fee should be set by the court upon a *quantum meruit* basis. Where the value of the legal services rendered by Plaintiff's counsel is not evident from the record, the matter may be remanded for an assessment of those damages." (citation modified)).

Accordingly, this portion of Defendants' motion is also denied.

## **CONCLUSION**

For the foregoing reasons Defendants' motion for summary judgment (Dkt. 12) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 20, 2026
Rochester, New York